1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11                          ----oo0oo----

12  SCOTT W. WOODS,
                                    NO. CIV. 2:09-1810 WBS KJM
13          Plaintiff,

14      v.                          MEMORANDUM AND ORDER RE:
                                    MOTIONS TO DISMISS
15  GREENPOINT MORTGAGE FUNDING,
    INC.; GMAC MORTGAGE; AURORA
16  LENDING SERVICES, LLC; LEHMAN
    BROTHERS; US BANK; and Does 1
17  through 50, inclusive,

18          Defendants.
    _____/
19

20                          ----oo0oo----

21          Plaintiff Scott W. Woods filed this action against

22  Greenpoint Mortgage Funding, Inc. ("Greenpoint"), GMAC Mortgage

23  ("GMAC"), Aurora Lending Services, LLC ("Aurora"), Lehman

24  Brothers,[1] and U.S. Bank National Association as trustee for

25  Greenpoint Mortgage Mortgage Funding Trust Mortgage Pass-Through

26  _____

27          [1]    While Lehman Brothers is named in the caption of
    plaintiff's amended complaint, they are not complained against in
28  any of plaintiff's causes of action.

                                  1

Certificates, Series 2006-AR7 ("US Bank"), alleging various state and federal claims relating to a loan he obtained to refinance his home in Folsom, California.  Greenpoint moves to dismiss plaintiff's First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  GMAC, Aurora, and US Bank also move to dismiss plaintiff's FAC pursuant to Rule 12(b)(6).  Plaintiff did not timely oppose the motions, and instead filed a Notice of Opposition on April 9, 2010--eleven days late and four days after the court took defendants' motions under submission without oral argument pursuant to Local Rule 230(c).  (Docket No. 37.)

I.   Factual and Procedural Background

    In 2006, plaintiff obtained a loan to refinance his home in Folsom, California.  (FAC ¶ 5.)  The loan is an adjustable-rate loan in the amount of $1,100,000.  (Id.)  Greenpoint is listed as the Lender on the promissory note.  (Id. ¶ 9.)  On August 18, 2008, plaintiff entered into a loan modification with GMAC, who allegedly represented to be the "Lender" under the loan.  (Id. ¶ 35.)  The loan modification allegedly provided for a reduction in the interest rate for five years.  (Id.)

    In the course of attempting to determine who the owner of the Note is, plaintiff alleges that in May 2009 GMAC informed him that Aurora is the owner.  (Id. ¶ 36.)  Aurora allegedly has no record of the loan, or of plaintiff, his address, or social security number.  (Id.)  Plaintiff allegedly sent Greenpoint and GMAC a Qualified Written Request ("QWR") pursuant to the Real

2

Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. §§ 2601-2617, on May 27, 2009.  (Id. ¶ 37.) GMAC responded again that Aurora is the owner, and that GMAC is the loan servicer. (Id. ¶ 41.)  Greenpoint represented to plaintiff that it sold the loan to Lehman Brothers in August 2006 and transferred the loan servicing to GMAC in October 2006.  (Id. ¶ 45.)  Plaintiff also alleges that he validly rescinded the loan under the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1667f, on May 28, 2009, by giving notice to Greenpoint, GMAC, and Aurora.  (Id. ¶¶ 23-29.)  Aurora responded to plaintiff's Notice of Cancellation on June 4, 2009, by allegedly stating it was unable to locate plaintiff's property in their records.  (Id. ¶ 46.)

Plaintiff's counsel allegedly sent a letter to Greenpoint, GMAC, and Aurora on June 15, 2009, to definitively determine the owner of the Note.  (Id. ¶ 48.)  GMAC responded on June 23, 2009, and allegedly stated that GMAC is the sub-servicer and Aurora is the master servicer of the loan.  (Id. ¶ 49.)  GMAC allegedly informed plaintiff that his loan is held in a pool of loans for which U.S. Bank acts as trustee.  (Id.)  On June 27, 2009, Woods allegedly sent U.S. Bank notice of his rescission of the loan.  (Id. ¶ 24.)  Greenpoint responded on September 16, 2009, allegedly stating and providing documentation that the loan's beneficial interest was transferred from Greenpoint to Aurora on August 16, 2009 and the servicing was transferred to GMAC on October 9, 2006.  (Id. ¶ 50.)

Plaintiff alleges that GMAC and Aurora are the servicers of his loan, and that they have failed to disclose the owner of his loan.  (Id. ¶¶ 32, 51.)  Plaintiff also alleges that

3

1  defendants understated the interest rate on his loan, failed to

2  make required disclosures, and improperly retained and misapplied

3  funds collected from plaintiff.

4        On the basis of the allegations above, plaintiff

5  asserts five causes of action against five defendants.

6  Greenpoint's Motion to Dismiss only challenges plaintiff's first

7  cause of action, as it is the only cause of action that complains

8  against Greenpoint.  GMAC, Aurora, and US Bank's Motion to

9  Dismiss addresses each of plaintiff's claims.

10  II.  <u>Discussion</u>

11        On a motion to dismiss, the court must accept the

12  allegations in the complaint as true and draw all reasonable

13  inferences in favor of the plaintiff.  <u>Scheuer v. Rhodes</u>, 416

14  U.S. 232, 236 (1974), <u>overruled on other grounds by</u> <u>Davis v.</u>

15  <u>Scherer</u>, 468 U.S. 183 (1984); <u>Cruz v. Beto</u>, 405 U.S. 319, 322

16  (1972).  To survive a motion to dismiss, a plaintiff needs to

17  plead "only enough facts to state a claim to relief that is

18  plausible on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct.

19  1955, 1974 (2007).  This "plausibility standard," however, "asks

20  for more than a sheer possibility that a defendant has acted

21  unlawfully," and where a complaint pleads facts that are "merely

22  consistent with" a defendant's liability, it "stops short of the

23  line between possibility and plausibility."  <u>Ashcroft v. Iqbal</u>,

24  129 S. Ct. 1937, 1949 (2009) (quoting <u>Twombly</u>, 550 U.S. at

25  556-57).

26        In general a court may not consider items outside the

27  pleadings upon deciding a motion to dismiss, but may consider

28  items of which it can take judicial notice.  <u>Barron v. Reich</u>, 13

4

F.3d 1370, 1377 (9th Cir. 1994).  A court may take judicial
notice of facts "not subject to reasonable dispute" because they
are either "(1) generally known within the territorial
jurisdiction of the trial court or (2) capable of accurate and
ready determination by resort to sources whose accuracy cannot
reasonably be questioned."  Fed. R. Evid. 201.

          Defendants have each submitted a Request for Judicial
Notice ("RJN").  Greenpoint's RJN contains four documents: (1) a
copy of the Deed of Trust, recorded in the Official Records of
Sacramento County on June 30, 2006; (2) a copy of the Note, which
is identical to the copy provided by plaintiff in Exhibit G to
the FAC; (3) a copy of the Notice of Right to Cancel, which is
identical to plaintiff's exhibit C; (4) a copy of the letter
dated June 23, 2009, from counsel for GMAC to plaintiff's
counsel, which is identical to plaintiff's Exhibit K.  The court
will take judicial notice of exhibits 1, 2, and 4 in defendant's
RJN, as they are matters of public record or whose accuracy
cannot be questioned.  See Lee v. City of Los Angeles, 250 F.3d
668, 689 (9th Cir. 2001).  Because plaintiff alleges that he
never received this copy of the Notice of Right to Cancel nor
signed it (FAC ¶¶ 17-18), the court will decline to take judicial
notice of Greenpoint's third exhibit.  See Olivera v. Am. Home
Mortg. Servicing, Inc., No. 09-3616, 2010 WL 334848, at *4 (N.D.
Cal. Jan. 22, 2010) (declining to take judicial notice of alleged
Notice of Right to Cancel proffered by defendants where plaintiff
challenged its authenticity); see also Morris v. Bank of Am., No.
09-2849, 2010 WL 761318, at *4 (N.D. Cal. Mar. 3, 2010) (same).
Defendants GMAC, Aurora, and US Bank's RJN contains two

documents: (1) a copy of the Deed of Trust; and (2) a copy of the Notice of Right to Cancel, which is identical to plaintiff's exhibit C.  The court will grant judicial notice of (1) and deny judicial notice of (2) for the same reasons explained above.

 A. <u>Truth in Lending Act Claim</u>

  Plaintiff's first cause of action complains against Greenpoint, GMAC, Aurora, and US Bank.  Plaintiff alleges that Greenpoint violated TILA by failing at the origination of the loan to make the "material disclosures," to disclose the finance charge, and to deliver two copies of the notice of the right to rescind as required by TILA.  (FAC ¶¶ 13-17.)  Rather, plaintiff alleges that he received only one defective copy of the notice of right to cancel from Greenpoint.  (<u>Id.</u> ¶ 17.)  Plaintiff also alleges that Greenpoint, GMAC, US Bank, and Aurora violated TILA when they did not implement plaintiff's rescission of the loan within twenty days as required by TILA, and when they failed to return any money received by them from plaintiff as part of the loan transaction.  (<u>Id.</u> ¶¶ 28-29.)  Plaintiff requests both a declaration that the Deed of Trust is now void as a result of plaintiff's prior rescission and damages as the result of these alleged violations.

  1. <u>Greenpoint's Motion to Dismiss</u>

  Greenpoint presents three reasons why plaintiff's first cause of action should be dismissed against it.  First, Greenpoint argues that plaintiff's rescission claim is time-barred under TILA.  (Greenpoint Mem. in Supp. of Mot. to Dismiss (Docket No. 25), at 4.)  Yet plaintiff does not seek rescission of the loan; indeed, plaintiff alleges that he rescinded the loan

1   by letter on May 28, 2009, (FAC Ex. D (Notice of Cancellation))

2   and seeks declaratory relief that the security interest is void

3   and damages for defendants' failure to comply with the Notice of

4   Cancellation.  As Greenpoint acknowledges, plaintiff has three

5   years from the date of consummation of the transaction to

6   rescind, which plaintiff has allegedly done.  <u>See</u> 15 U.S.C. §

7   1635(f).  Greenpoint's first argument, therefore, must fail.

8           Second, Greenpoint argues that plaintiff's first cause

9   of action must be dismissed because a TILA damages claim is

10  subject to a one-year statue of limitations.  15 U.S.C. §

11  1640(e).  Plaintiff seeks both damages and declaratory relief for

12  the alleged TILA violation.  In his Opposition, plaintiff argues

13  that the damages claims in his first cause of action should

14  survive as a defense by recoupment or set-off.  (Mem. in Opp'n to

15  Def.'s Mot. to Dismiss (Docket No. 37), at 5.)  In support of

16  this argument, plaintiff cites 15 U.S.C. § 1640(e), which

17  provides that the one-year statute of limitations does not apply

18  where a borrower "assert[s] a violation of this subchapter in an

19  action to collect the debt which was brought more than one year

20  from the date of the occurrence of the violation as a matter of

21  defense by recoupment or set-off in such action . . . ."

22  Plaintiff has not alleged, however, that defendants have

23  initiated any court proceedings against plaintiff to collect on

24  plaintiff's debt.  Rather, plaintiff has filed suit against

25  defendants.  When a debtor files suit against her creditor, "the

26  claim by the debtor is affirmative rather than defensive."  <u>Ortiz</u>

27  <u>v. Accredited Home Lenders, Inc.</u>, 639 F. Supp. 2d 1159, 1164-65

28  (S.D. Cal. 2009) (citation omitted) (also noting that a non-

7

judicial foreclosure is not an "action" as contemplated by TILA).
Plaintiff's claim for damages under TILA, therefore, is not
subject to a waiver of the one year statute of limitations.  As
plaintiff filed his complaint more than one year after the
origination of his loan and has provided no facts that would
support equitable tolling of the statute of limitations, his
claim for damages related to TILA violations at the origination
of his loan must be dismissed.

While plaintiff filed his claim for damages more than a
year after the closing of his loan, the failure to honor
plaintiff's rescission request or request for information is a
separate actionable violation of TILA.  See Buick v. World Sav.
Bank, 637 F. Supp. 2d 765, 771-72 (E.D. Cal. 2008) (England, J.)
(citing In re Wright, 133 B.R. 704 (E.D. Pa. 1991) ("The failure
of a lender to properly act on a rescission is a new violation
separate and distinct from the disclosure violation that gave
rise to the right to rescind.")).  As alleged, plaintiff provided
Greenpoint with a valid notice of rescission within the requisite
time period under 15 U.S.C. § 1635(f) and Greenpoint refused to
comply.  If a creditor receives a timely Notice of Cancellation
and then refuses to cancel the loan, the borrower has one year
from the refusal to file suit for damages pursuant to 15 U.S.C. §
1640.  Miquel v. Country Funding Corp., 309 F.3d 1161, 1165 (9th
Cir. 2002) (citing 15 U.S.C. § 1640(e)).  Because plaintiff
brought this action for damages pursuant to 15 U.S.C. § 1640
within one year of having his Notice of Cancellation refused, it
is timely.  See Buick, 637 F. Supp. 2d at 771-72 (citing Belini
v. Wash. Mut. Bank, FA, 412 F.3d 17, 25 (1st Cir. 2005)).

8

1        Third, Greenpoint argues that plaintiff has never
2   offered to tender the funds necessary to validly rescind the
3   loan.  Under TILA, the security interest in the Note becomes void
4   upon rescission and the creditor must return any money or
5   property given by the borrower under the transaction within
6   twenty days.  15 U.S.C. § 1635(b); see 12 C.F.R. § 226.23(d).
7   "Upon the performance of the creditor's obligations," the
8   borrower must tender the property or its reasonable value to
9   creditor.  15 U.S.C. § 1635(b).  A notice of rescission, however,
10  does not always automatically rescind the Note.  If a defendant
11  acquiesces to the notice then the transaction automatically
12  rescinds, thereby triggering the sequence of events outlined in §
13  1635(b).  If a defendant contests the notice, however, then "it
14  cannot be that the security interest vanishes immediately upon
15  the giving of notice." Yamamoto v. Bank of N.Y., 329 F. 3d 1167,
16  1172 (9th Cir. 2003) ("In a contested case, [rescission] happens
17  when the right to rescind is determined in the borrower's
18  favor.").

19       Section 1635 gives courts the power to modify the
20  rescission procedure.  15 U.S.C. § 1635(b).  The Ninth Circuit
21  has held that in certain circumstances rescission under TILA
22  "should be conditioned on repayment of the amounts advanced by
23  the lender," Yamamoto, 329 F. 3d at 1170 (citing LaGrone v.
24  Johnson, 534 F.2d 1360 (9th Cir. 1976) (requiring tender where
25  TILA violations were not egregious and equities favor creditor
26  that would be left in unsecured position in borrower's
27  intervening bankruptcy)), and that judges may alter the sequence
28  of rescission events under 15 U.S.C. § 1635(b).  See Yamamoto,

329 F.3d at 1171 ("[W]hether a decree of rescission should be conditional depends upon 'the equities present in a particular case, as well as consideration of the legislative policy of full disclosure that underlies [TILA] and the remedial-penal nature of the private enforcement provisions of the Act.'") (quoting Palmer v. Wilson, 502 F.2d 860, 862 (9th Cir. 1974)); see also In re Hubbel, No. 09-3424, 2010 WL 1222777, at *4 (N.D. Cal. Mar. 24, 2010) (discussing Yamamoto).

District courts in this circuit have dismissed rescission claims under TILA at the pleading stage based upon the plaintiff's failure to allege an ability to tender loan proceeds. See, e.g., Garza v. Am. Home Mortgage, No. 1:08-1477, 2009 U.S. Dist. LEXIS 7448, at *15 (E.D. Cal. Jan. 27, 2009) (stating that "rescission is an empty remedy without [the borrower's] ability to pay back what she has received"); Ibarra v. Plaza Home Mortgage, No. 09-1707, 2009 U.S. Dist. LEXIS 80581, at *22 (S.D. Cal. Sept. 4, 1009); Carnero v. Weaver, No. 09-1995, 2009 U.S. Dist. LEXIS 62665, at *8 (N.D. Cal. July 20, 2009); Pesayco v. World Sav., Inc., No. 09-3926, 2009 U.S. Dist. LEXIS 73299, at *4 (C.D. Cal. July 29, 2009); Ing Bank v. Korn, No. 09-124Z, 2009 U.S. Dist. LEXIS 73329, at *7 (W.D. Wash. May 22, 2009). Plaintiff's Notice of Cancellation stated that plaintiff would "tender to you any and all monies or properties you have given to borrower, or their reasonable value" upon completion of the creditor's obligations under 15 U.S.C. § 1635(b).  (FAC Ex. D.) Plaintiff has not, however, pled his ability to tender the loan proceeds, and his bald assertion that he will tender over one million dollars does not cross "the line between possibility and

plausibility." Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 556-57).

Like many other courts in the Ninth Circuit, this court will not entertain plaintiff's claims for relief under TILA as a result of defendants' failure to honor his rescission unless plaintiff alleges the ability to complete his part of the rescission process and tender either the property itself or its reasonable value as required by section 1635. Taking all facts plead in the most favorable light to plaintiff, he has pled that he mailed a timely Notice of Cancellation to defendants and has offered to tender, but has not alleged any facts indicating that he has or is able to tender sufficient funds to repay the loan principal. To the contrary, the facts that the court does have indicate that plaintiff has thus far been unable to tender the amount of the loan or unwilling to return the property to the creditor. (FAC Ex. K.) Without facts indicating plaintiff's ability to tender, he cannot seek relief from the court for defendant's alleged failure to honor his rescission. Greenpoint's motion to dismiss will therefore be granted with leave to amend.

2. GMAC, Aurora, and US Bank's Motion to Dismiss

Plaintiff alleges that GMAC, Aurora, and US Bank failed to implement his notice of rescission under TILA, and alleges that each of them are assignees of his loan. Section 1641 of TILA specifically makes assignees of creditors civilly liable under TILA. 15 U.S.C. § 1641. As alleged assignees, GMAC, Aurora, and US Bank have the same defenses available to them as Greenpoint. For the reasons stated above, GMAC, Aurora, and US

1  Bank's motion to dismiss plaintiff's first cause of action will

2  also be granted.

3       B.    Real Estate Settlement Procedures Act and TILA Claim

4            The Real Estate Settlement Procedures Act of 1974

5  ("RESPA"), 12 U.S.C. §§ 2601-2617, provides that borrowers must

6  be provided certain disclosures relating to the mortgage loan

7  settlement process.  See 12 U.S.C. § 2601 (2006).  Section 2605

8  relates to the disclosures and communications required regarding

9  the servicing of mortgage loans, and provides that loan servicers

10 have a duty to respond to qualified written requests ("QWRs")

11 from borrowers asking for information relating to the servicing

12 of their loan.  See 12 U.S.C. § 2605(e).  Loan servicers have

13 sixty days after the receipt of a QWR to respond to the borrower

14 inquiry.  12 U.S.C. § 2605(e)(2).

15           Plaintiff's second cause of action complains against

16 GMAC and Aurora as loan servicers for failing to provide required

17 disclosures, misapplying funds belonging to plaintiff, failing to

18 provide a full accounting, and failing to disclose ownership of

19 the Note and loan.  Plaintiff alleges that, inter alia, he mailed

20 GMAC and Greenpoint a QWR on May 27, 2009, which included a

21 demand to disclose the ownership of the Note as required by TILA.

22 (FAC ¶ 38.)  GMAC allegedly told plaintiff that Aurora owns the

23 loan and that GMAC is the servicer, Greenpoint told plaintiff

24 that the loan was sold to Lehman Brothers and that GMAC is the

25 servicer, and Aurora has stated in phone conversations with

26 plaintiff that it has no record of the loan.  (Id. ¶¶ 41, 45-47;

27 Id. Ex. F-I.)  Counsel for GMAC later allegedly informed

28 plaintiff that GMAC is the loan's sub-servicer, Aurora is the

                              12

master servicer, and that the loan is held in a pool of loans for which US Bank acts as trustee.  (<u>Id.</u> ¶ 49; <u>Id.</u> Ex. K.)  Because GMAC has allegedly provided plaintiff with conflicting information regarding the ownership of his Note, plaintiff charges that it has not properly responded to his QWR or provided him with the identification of the present owner of the Note. (<u>Id.</u> ¶¶ 39-51.)

GMAC and Aurora argue that plaintiff's TILA cause of action must fail because it is time-barred by the one-year statute of limitations for damages claims under TILA. Plaintiff's second cause of action alleges that GMAC and Aurora violated TILA, 15 U.S.C. § 1641(f)(2), which provides that a loan servicer "shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation." (<u>See</u> FAC ¶ 52.)  As previously stated, the failure to honor plaintiff's request for information is a distinct, actionable violation under TILA.  <u>See</u> <u>Buick</u>, 637 F. Supp. 2d at 771-72.

However, "[c]ivil liability under TILA applies to creditors."  <u>Pelayo v. Home Capital Funding</u>, No. 08-CV-2030, 2009 U.S. Dist. LEXIS 44453, at *12 (S.D. Cal. May 22, 2009). "15 U.S.C. § 1641 provides that any TILA action (including a rescission claim) which may be brought against a creditor may also be brought against the assignee of a creditor.  However, under § 1641, loan servicers 'shall not be treated as an assignee of [a consumer] obligation for purposes of this section unless the servicer is or was the owner of the obligation.'"  <u>Id.</u>

1    (emphasis in original); see also Marks v. Ocwen Loan Servicing,

2    2008 U.S. Dist. LEXIS 12175, at *4-5 (N.D. Cal. Feb. 6, 2008)

3    (noting that "although TILA provides that assignees of a loan may

4    be liable for TILA violations, loan servicers are not liable

5    under TILA as assignees unless the loan servicer owned the loan

6    obligation at some point").  Plaintiff alleges that GMAC and

7    Aurora are servicers, yet also alleges that he does not know who

8    owns the Note or how the beneficial interest in the loan has

9    transferred over time.  While it is unclear whether defendants

10   were in fact an assignee of plaintiff's loan, construing the

11   facts and all reasonable inferences in favor of plaintiff, it

12   plausible that defendants were an assignee of the creditor of the

13   loan outside of servicing obligations.[2]  See Pelayo, 2009 U.S.

14   Dist. LEXIS 44453 at *13; see also Cabalo v. EMC Mortg. Corp.,

15   No. 08-5667, 2009 U.S. Dist. LEXIS 8283, at *6 (N.D. Cal. Feb. 5,

16   2009)(finding the plaintiff sufficiently pled that defendant

17   mortgage servicer was liable under TILA under circumstances where

18   "it [was] not clear who the loan's holder [was]" and "documents

19   submitted by defendants [did] not show [an assignment of the

20   loan] was never made").

21        GMAC also argues that plaintiff's RESPA cause of action

22   must fail because he fails to allege how it failed to respond to

23   his QWR request and he has not identified any code section of

24

25

26   _____

27        [2]   The allegation the defendant is a servicer and/or
     creditor under TILA is permissible because alternative
28   allegations are permitted under Federal Rule of Civil Procedure
     8(d).

                                    14

RESPA that GMAC allegedly violated.[3]  RESPA obliges servicers to
respond to QWRs for information "relating to the servicing of"
the loan within sixty days.  12 U.S.C. § 2605(e)(1)(A),
(e)(2)(C).  Plaintiff specifically alleges that he requested TILA
disclosures pursuant to 15 U.S.C. § 1641(f)(2).  Information
regarding oh whose behalf the servicer is accepting loan payments
seems to clearly be related to the servicing of plaintiff's loan
and a proper subject of a QWR under RESPA.[4]  Plaintiff admits
that GMAC responded to his written requests, but alleges that the
varied responses and documentary evidence show that the
defendants are providing him with false and misleading
information.  (FAC ¶¶ 39-40, 43, 51, 57.)  Viewing the FAC in the
light most favorable to the plaintiff, plaintiff has stated a
valid RESPA cause of action against GMAC.

        Plaintiffs must also allege actual harm to survive a
motion to dismiss.  Section 2605(f) imposes liability on
servicers that violate RESPA and fail to make the required
disclosures.  12 U.S.C. § 2605(f).  Although this section does
not explicitly make a showing of damages part of the pleading
standard, "a number of courts have read the statute as requiring
a showing of pecuniary damages in order to state a claim."  <u>Allen</u>

---

[3]    Plaintiff alleges that he sent a QWR to Greenpoint and
GMAC, and does not allege that he sent a QWR to Aurora.  Because
plaintiff does not allege any other specific RESPA violations
other than the failure to respond to the QWR, the court will
interpret this claim as alleged solely against GMAC.

[4]    RESPA defines "servicing" as: "[R]eceiving any
scheduled periodic payments from a borrower pursuant to the terms
of any loan . . . and making the payments of principal and
interest and such other payments with respect to the amounts
received from the borrower as may be required pursuant to the
terms of the loan."  12 U.S.C. § 2605(i)(3).

v. United Financial Mortg. Corp., 2009 WL 2984170, at *5 (N.D.
Cal. Sept. 15, 2009).  For example, in Hutchinson v. Del. Sav.
Bank FSB, the court stated that "alleging a breach of RESPA
duties alone does not state a claim under RESPA.  Plaintiff must,
at a minimum, also allege that the breach resulted in actual
damages."  410 F. Supp. 2d 374, 383 (D.N.J. 2006).  Courts,
however, "have interpreted this requirement liberally."  Yulaeva
v. Greenpoint Mortg. Funding, Inc., No. 09-1504, 2009 WL 2990393,
at *15, (E.D. Cal. Sept. 9, 2009)(Karlton, J.).

Plaintiff alleges that he has made over $100,000 in
mortgage payments to GMAC and that he relied on GMAC's assertion
that it owned the loan by entering into a loan modification
arrangement with GMAC. (FAC ¶¶ 35, 72.) Plaintiff has been unable
to determine who owns his loan, where his mortgage payments to
GMAC have gone, and how they have been applied or misapplied to
paying off his loan balance.  By failing to give plaintiff a
straight answer to these simple questions, GMAC has harmed
plaintiff by preventing him from rescinding the loan and having
his mortgage payments returned to him.  Plaintiff has therefore
stated a valid RESPA cause of action.

## C.   Fraud

In California, the essential elements of a claim for
fraud are "(a) a misrepresentation (false representation,
concealment, or nondisclosure); (b) knowledge of falsity (or
'scienter'); (c) intent to defraud, i.e., to induce reliance; (d)
justifiable reliance; and (e) resulting damage."  In re Estate of
Young, 160 Cal. App. 4th 62, 79 (2008).  Under the heightened
pleading requirements for claims of fraud under Federal Rule of

16

Civil Procedure 9(b), "a party must state with particularity the circumstances constituting the fraud." Fed. R. Civ. P. 9(b). The plaintiffs must include the "who, what, when, where, and how" of the fraud. <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1006 (9th Cir. 2003) (citation omitted). "The plaintiff must set forth what is false or misleading about a statement, and why it is false." <u>Decker v. Glenfed, Inc.</u>, 42 F.3d 1541, 1548 (9th Cir. 1994). Additionally, "[w]here multiple defendants are asked to respond to allegations of fraud, the complaint must inform each defendant of his alleged participation in the fraud." <u>Ricon v. Reconstrust Co.</u>, No. 09cv937, 2009 WL 2407396, at *3 (S.D. Cal. Aug. 4, 2009) (quoting <u>DiVittorio v. Equidyne Extractive Indus.</u>, 822 F.2d 1242, 1247 (2d Cir. 1987)).

Plaintiffs' fraud allegation reincorporates his earlier allegations, which include references to the exhibits of letters sent by plaintiff and from defendants regarding the holder of the Note and owner of the loan. (<u>See</u> FAC Ex. D-L). These exhibits clearly provide the date, address, and identifying information about the defendants and the alleged statements made by them with enough specificity to put GMAC and Aurora sufficiently on notice as to the statements that plaintiff alleges are false and misleading. Plaintiff alleges that GMAC and Aurora's letters and statements to him regarding the owner of the loan are false and misleading in part because they are clearly in conflict, (FAC ¶ 64) which is sufficient to survive a motion to dismiss at this time.

Likewise, plaintiff has established the remaining elements of fraud sufficiently. Plaintiff alleges that he had

17

1  relied on GMAC's prior assertions that it owned the loan when he

2  entered into a loan modification agreement with GMAC, and that he

3  has been harmed by this fraud as he has been unable to rescind

4  the loan and have his principal payments returned to him.  This

5  properly alleges both intent to induce reliance and the "cause

6  and effect relationship between the fraud and damages sought"

7  necessary to survive a motion to dismiss.  <u>Small v. Fritz</u>

8  <u>Companies</u>, 30 Cal. 4th 167, 202 (2003) (citations omitted).

9  Plaintiff's allegations that each defendant has denied ownership

10 of the loan and passed him off to another party is sufficient to

11 plead scienter.  It is clear that at least some, if not all, of

12 the information allegedly told to plaintiff by the defendants is

13 false.  As a result, plaintiff has been prevented from

14 determining who owns his loan, how his mortgage payments have

15 been credited to his loan balances, or rescinding the loan.  GMAC

16 and Aurora's motion to dismiss plaintiff's third cause of action

17 will therefore be denied.

18      D.   <u>Negligent and Reckless Misrepresentation</u>

19           To prove a cause of action for negligence, plaintiff

20 must show "(1) a legal duty to use reasonable care; (2) breach of

21 that duty, and (3) proximate [or legal] cause between the breach

22 and (4) the plaintiff[s'] injur[ies]."  <u>Mendoza v. City of Los</u>

23 <u>Angeles</u>, 66 Cal. App. 4th 1333, 1339 (Ct. App. 1998) (citation

24 omitted).  "The existence of a legal duty to use reasonable care

25 in a particular factual situation is a question of law for the

26 court to decide."  <u>Vasquez v. Residential Invs., Inc.</u>, 118 Cal.

27 App. 4th 269, 278 (2004).

28           Plaintiff's fourth cause of action for negligent and

reckless misrepresentation states only that GMAC and Aurora did not have reason to believe that their statements to plaintiff were true, and that plaintiff relied on these representations to his detriment.  (FAC ¶¶ 68-70.)  Even incorporating the prior allegations by reference, this sparse pleading clearly fails to allege the necessary elements for negligence.  Specifically, plaintiff fails to allege how Aurora and GMAC owed him a duty of care and that they breached that duty, how plaintiff was injured, and that his injuries are causally related to defendants' representations.  This is compounded by the fact that, to the extent that plaintiff alleges that GMAC and Aurora are loan servicers, they do not owe a duty to the borrowers of the loans they service.  See Watts v. Decision One Mortg. Co., No. 09-43 2009 U.S. Dist. LEXIS 59694 (S.D. Cal. July 13, 2009); Marks v. Ocwen Loan Servicing, No. 07-2133, 2009 WL 975792, at *7 (N.D. Cal. Apr. 10, 2009) ("[A] loan servicer does not owe a fiduciary duty to a borrower beyond the duties set forth in the loan contract.")

The court will therefore dismiss this cause of action with leave to amend.

E.   Conversion

Defendants also seek dismissal of plaintiff's conversion claim.  "Conversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein," which includes assuming "control or ownership over the property," or applying the property to one's own use.  Messerall v. Fulwider, 199 Cal. App. 3d 1324, 1329 (1988) (citing Igauye v. Howard, 114 Cal. App. 2d

122, 126 (1952)).  The basic elements of a conversion claim are
(1) the plaintiff's ownership or right to possession of personal
property; (2) the defendant's disposition of the property in a
manner that is inconsistent with the plaintiff's property rights;
and (3) resulting damages.  <u>Fremont Indemnity Co. v. Fremont Gen.
Corp.</u>, 148 Cal. App. 4th 97, 119 (2007) (citing <u>Burlesci v.
Petersen</u>, 68 Cal. App. 4th 1062, 1066 (1998)).  Legal title to
property is not necessary for an action for damages in
conversion; a plaintiff must only show that she was "entitled to
immediate possession at the time of conversion." <u>Messerall v.
Fulwider</u>, 199 Cal. App. 3d 1324, 1329 (1988) (citing <u>Bastanchury
v. Times-Mirror Co.</u>, 68 Cal. App. 2d 217, 236 (1945)).

Defendants argue that plaintiff has failed to allege
facts that plausibly show that either GMAC or Aurora "exercised
dominion over plaintiff's personal property in a manner
inconsistent with the plaintiff's rights at the time." <u>Somsanith
v. Bank of America, N.A.</u>, No. 09-1791, 2009 WL 3756693, at *4
(E.D. Cal. Nov. 6, 2009) (Shubb, J.)  Unlike in <u>Somsanith</u>,
plaintiff here alleges that GMAC and Aurora collected payments
from plaintiff and failed to apply them to his loan.  While GMAC
may have had the right as plaintiff's servicer to receive
payments from plaintiff, and while Aurora may have had the right
as plaintiff's senior servicer or owner of the loan to receive
payments from GMAC, neither had the right to allegedly convert
plaintiff's funds for their own gain.  Plaintiff alleges that
GMAC and Aurora provided conflicting information with respect to
Aurora's involvement in the loan and with respect to alleged
payments made by GMAC to Aurora.  (FAC ¶¶ 73-74.)  This is

sufficient to plead that one or both of defendants improperly converted plaintiff's mortgage payments, and plaintiff has therefore adequately pled a cause of action for conversion.

F.   Sanctions

James A. Nations ignored Local Rule 230(c) and failed to timely file his opposition to defendants' motions to dismiss. Instead of informing the court of his inability to meet the opposition deadline, he did nothing.  Counsel's failure to comply with Local Rule 230(c) and timely file any response to Greenpoint's or Aurora, US Bank, and GMAC's motions to dismiss is inexcusable and has seriously inconvenienced both opposing counsel and the court.  Specifically, it has disrupted the orderly process of litigation by forcing the court to spend hours attempting to figure out what arguments plaintiff would have made had plaintiff bothered to file an opposition.  The court then received plaintiff's untimely opposition after it had already completed drafting a final order on the defendants' motions. This untimely submission forced the court to not only start all over in evaluating defendants' motions, but to further delay the issuance of the order so that defendants could submit a reply and respond to plaintiff's arguments.

Local Rule 110 authorizes the court to impose sanctions for "[f]ailure of counsel or of a party to comply with these Rules."  The court will therefore sanction plaintiff's counsel, James A. Nations, $250.00 payable to the Clerk of the Court within ten days from the date of this Order, unless he shows good cause for his failure to comply with the Local Rules.

IT IS THEREFORE ORDERED that Greenpoint's Motion to

Dismiss be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that GMAC, Aurora, and US Bank's Motion to Dismiss is DENIED with respect to plaintiff's second, third, and fifth causes of action.

IT IS FURTHER ORDERED that GMAC, Aurora, and US Bank's Motion to Dismiss is GRANTED in all other respects.

IT IS FURTHER ORDERED that within ten days of the date of this Order James A. Nations shall either (1) pay sanctions of $250.00 to the Clerk of the Court, or (2) submit a statement of good cause explaining his failure to comply with Local Rule 230(c).

Plaintiff has thirty days from the date of this Order to file an amended complaint, to the extent he can do so consistent with this Order.

DATED:  April 27, 2010

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE